UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABDELRAHMAN F. BADER, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:18-cv-01367 |
| NAVIENT SOLUTIONS, LLC, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

NOW comes ABDELRAHMAN F. BADER ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., complaining as to the conduct of NAVIENT SOLUTIONS, LLC ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") pursuant to 815 ILCS 505/1.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the TCPA. Subject matter jurisdiction is conferred upon this Court by 47 U.S.C §227, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law ICFA claim pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Northern District of Illinois and a substantial portion the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

## PARTIES

4. Plaintiff is a 30 year old person residing at 5431 West 83rd Street, Burbank, Illinois, which falls within the Northern District of Illinois.

5. Plaintiff is a "person" as defined by 47 U.S.C. §153(39).

6. Defendant is the largest servicer of student loans in the United States with its principal place of business located at 123 Justison Street, Wilmington, Delaware. Defendant is engaged in the business of collecting or attempting to collect, directly or indirectly, student loans owed or due or asserted to be owed or due to others using the mail and telephone across the country, including in Illinois.

7. Defendant is a "person" as defined by 47 U.S.C. §153(39).

8. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all time relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

9. In August 2017, Plaintiff began receiving calls to his cellular phone, (312) XXX-4106, from Defendant.

10. At all times relevant, Plaintiff was the sole subscriber, owner, and operator of the cellular phone ending in -4106. Plaintiff is and has always been financially responsible for the cellular phone and its services.

11. Plaintiff's phone number ending in -4106 has been registered on the National Do-Not-Call Registry for approximately one year.

12. Defendant has used several different area codes and phone numbers when placing calls to Plaintiff's cellular phone, including but not limited to: (570) 241-0198, (302) 261-5758, (202) 899-1332, (386) 269-4583, and (512) 371-6697.

13. Upon information and belief, the aforementioned phone numbers are regularly utilized by Defendant during its debt collection activities.

14. When Plaintiff answers Defendant's phone calls, he experiences a noticeable pause, lasting approximately four to five seconds in length, before he is connected with a live representative.

15. Upon speaking with one of Defendant's representatives, Plaintiff is informed that it is seeking to collect upon a debt owed by at least one individual, named "Shavon Smith."

16. Plaintiff does not owe any debt to Defendant, and is unaware of any individual by that name, so Plaintiff was confused as to why Defendant was contacting him.

17. Plaintiff has spoken with Defendant's representatives on a number occasions and has informed them that he is not the individual whom Defendant is seeking to collect upon, and has demanded that Defendant stop contacting him.

18. Despite Plaintiff's demands, Defendant continued its behavior of placing mass phone calls to Plaintiff's cellular phone using different phone numbers.

19. When Plaintiff does not answer Defendant's calls, Defendant leaves voice messages on Plaintiff's cellular phone asking for the unknown individual to return its calls.

20. Defendant has also sent Plaintiff a number of text messages intended for this unknown individual.

21. Due to the incessant nature of these contacts, on October 28, 2017, Plaintiff sent, via certified mail, a letter to Defendant's headquarters, demanding that Defendant "stop calling and harassing [him]," as "the person whom [Defendant] is trying to contact does not own this phone or have relation with [him]." *See* attached Exhibit A for a true and correct copy of Plaintiff's certified mailing to Defendant.

22. On October 30, 2017, Defendant received Plaintiff's letter. *See* attached Exhibit B for tracking information pertaining to Plaintiff's certified mailing.

23. In spite of Plaintiff reiterating his demands to Defendant in writing, Defendant's harassing phone calls persisted into 2018, giving Plaintiff no choice but to contact his attorneys to commence suit.

24. Defendant has also called Plaintiff's cellular phone multiple times during the same day, despite having notice that it was contacting an innocent party who has no relationship to Defendant.

25. In sum, Plaintiff has received at least 105 unconsented calls from Defendant to his cellular phone, all intended for this unknown individual.

## DAMAGES

26. Plaintiff has been unduly inconvenienced and harassed by Defendant's unremitting and unlawful attempts to collect upon a debt for which he has no obligation.

27. Plaintiff has suffered emotional distress and mental anguish, as a direct result of the unlawful collection practices of Defendant.

28. Defendant's harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

29. With the goal of specifically addressing Defendant's conduct, as his oral attempts at the same were unfruitful, Plaintiff was forced to incur fees associated with purchasing stamps and sending a certified letter.

30. Defendant's phone harassment campaign has caused Plaintiff actual harm, including but not limited to, invasion of privacy, aggravation that accompanies unsolicited telephone calls, emotional distress, increased risk of personal injury resulting from the distraction caused by the never-ending calls, increased usage of his telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on his cellular phone, and diminished space for data storage on his cellular phone.

31. Frustrated over the persistent calls, Plaintiff spoke with Sulaiman regarding his rights resulting in costs and expenses.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

32. Plaintiff repeats and realleges paragraphs 1 through 31 as though fully set forth herein.

33. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") without their consent.

34. The TCPA, pursuant to 47 U.S.C. § 227(a)(1), defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

35. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

36. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

37. Upon information and belief, the predictive dialing system employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

38. Defendant used an ATDS in connection with its communications directed towards Plaintiff. The noticeable pause, lasting approximately four to five seconds in length, which Plaintiff experiences during answered calls before being connected to a live representative of Defendant is instructive that an ATDS was being used. Similarly, the frequency and nature of Defendant's calls strongly suggests that an ATDS is being utilized.

39. Defendant violated the TCPA by placing mass phone calls to Plaintiff's cellular phone using an ATDS without his consent. Plaintiff does not have any business relationship with Defendant nor has he ever given it permission to call his cellular phone. Defendant was contacting Plaintiff looking for a different individual who has no relation to Plaintiff. As such, Plaintiff could not have given Defendant consent to contact him, but yet, he still continued to receive over one hundred phone calls intended for this unknown individual.

40. Not only did Plaintiff notify Defendant's representatives during phone conversations that he was not the individual it was looking for and to stop contacting him, but Plaintiff also mailed Defendant a letter reflecting the same. *See* Exhibit A.

41. The calls placed by Defendant to Plaintiff were regarding business transactions and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

42. Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Defendant is liable to Plaintiff for at least $500.00 per call. Moreover, Defendant's willful and knowing violations of the TCPA

6

should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C). Calling an innocent individual over 100 times is willful and knowing behavior, especially after Plaintiff notified Defendant, *in writing,* that he was not the person it was seeking to collect upon and to stop contacting him. Defendant was aware that it was contacting the wrong person but consciously chose to proceed in light of that knowledge in an attempt to harass Plaintiff into submission. Defendant did not have a legal right to contact Plaintiff, but its conduct exemplifies that Defendant will attempt to extract payment out of innocent consumers. WHEREFORE, Plaintiff, ABDELRAHMAN F. BADER, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Enjoining Defendant from placing any more phone calls to Plaintiff's cellular phone;

c. Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

d. Awarding Plaintiff costs and reasonable attorney fees; and

e. Awarding any other relief as this Honorable Court deems just and appropriate

### COUNT II – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

43. Plaintiff restates and realleges paragraphs 1 through 42 as though fully set forth herein.

44. Plaintiff is a "person" and "consumer" as defined by 815 ILCS 505/1(c) and (e) of the ICFA.

45. Defendant's collection calls to Plaintiff are "trade" and "commerce" as defined by 815 ILCS 505/1(f) of the ICFA.

46. The ICFA states:

7

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

47. Defendant violated 815 ILCS 505/2 by engaging in an unfair and deceptive act or practice in contacting Plaintiff. It was unfair for Defendant to relentlessly contact Plaintiff through means of an ATDS when it never had his consent to do so. Defendant placed over one hundred phone calls to Plaintiff's cellular phone, with the intent of collecting upon a different individual who had no relation to Plaintiff whatsoever. Defendant's egregious and unfair behavior does not just end there. Defendant was notified by Plaintiff that it was continuously calling the wrong person, and was told to cease its contacts during a handful of phone conversations. However, Defendant ignored Plaintiff's demands and continued its harassing conduct. Subsequently, Plaintiff mailed Defendant a letter indicating that Defendant was contacting the wrong person and to cease contacting Plaintiff immediately. Nonetheless, Defendant's conduct ensued, prompting Plaintiff to file this action.

48. Defendant also placed multiple calls to Plaintiff's cellular phone during the same day. Placing several calls in a short amount of time is extremely harassing behavior that amounts to unfair practice, especially when the phone calls are not intended for Plaintiff.

49. Following its characteristic behavior in placing voluminous calls to consumers, Defendant engaged in an unfair and deceptive act, willfully done with the hope that Plaintiff would be compelled to make payment, even though he is not the debtor whom Defendant was seeking to collect upon. Further, Defendant intended that Plaintiff rely on its unfair and deceptive conduct. Defendant had been notified several times of Plaintiff's identity yet still relentlessly contacted

8

Plaintiff. Armed with this knowledge, there would be little reason for continued and relentless contact unless Defendant was intending that Plaintiff rely on its conduct to answer its calls and ultimately extract payment from him.

50. Plaintiff lacks a meaningful choice to go about avoiding Defendant's contacts, which places an unreasonable burden on Plaintiff to try and address Defendant's conduct. This further underscores the immoral, unethical, oppressive, and unscrupulous nature of Defendant's conduct which is contrary to public policy.

51. As the largest servicer of student loans in the United States that routinely contacts consumers, Defendant had safeguards in place to avoid repeatedly calling parties who have expressed their desires to not be contacted. Despite these safeguards, Defendant systematically engaged in collection activity against Plaintiff. The volume of phone calls conveys that Defendant engaged in behavior that goes beyond a bona fide error, as it could have readily noticed that it was incessantly calling the wrong individual who has no relationship with it.

52. The ICFA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendant.

53. Defendant's conduct of placing incessant telephone calls to an individual without that individual's consent involves trade practices directed to the market generally and which otherwise implicate consumer protection concerns.

54. Plaintiff was the subject of Defendant's incessant and relentless collection efforts, even though it had no relationship with Defendant and had not consented to the contacts. Regardless of whether a consumer actually owes a debt to an entity like Defendant, the nature of Defendant's conduct in placing relentless phone calls after consent for such calls had been explicitly revoked, is behavior which impacted Plaintiff and which would similarly impact other consumers. Such

conduct raises serious consumer protection concerns as entities like Defendant must not be given free rein to harass consumers by placing excessive telephone calls without consumer consent. The relief requested below serves the interests of consumers by ensuring this pervasively unfair conduct is addressed.

55. The ICFA further states:

> "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a.

56. As pled in paragraphs 26 through 31, Plaintiff has suffered actual damages as a result of Defendant's unlawful practices. As such, Plaintiff is entitled to relief pursuant to 815 ILCS 505/10a.

57. An award of punitive damages is appropriate because placing over one hundred phone calls after having verbal and written demands to cease such conduct is hallmark of outrageous, willful and wanton behavior. Especially since these calls were intended for a different individual, Plaintiff innocently had to endure an assault of his rights. Upon information and belief, Defendant regularly engages in the above described behavior against consumers in Illinois and for public policy reasons should be penalized.

WHEREFORE, Plaintiff, ABDELRAHMAN F. BADER, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c. Awarding Plaintiff costs and reasonable attorney fees;

d. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: February 22, 2018                    Respectfully submitted,

s/ Nathan C. Volheim                         s/Taxiarchis Hatzidimitriadis
Nathan C. Volheim, Esq. #6302103             Taxiarchis Hatzidimitriadis, Esq. #6319225
Counsel for Plaintiff                        Counsel for Plaintiff
Admitted in the Northern District of Illinois  Admitted in the Northern District of Illinois
Sulaiman Law Group, Ltd.                     Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200          2500 South Highland Ave., Suite 200
Lombard, Illinois 60148                      Lombard, Illinois 60148
(630) 568-3056 (phone)                       (630) 581-5858 (phone)
(630) 575-8188 (fax)                         (630) 575-8188 (fax)
nvolheim@sulaimanlaw.com                     thatz@sulaimanlaw.com