UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABDELRAHMAN F. BADER, <br><br> Plaintiff, <br><br> v. <br><br> NAVIENT SOLUTIONS, LLC, <br><br> Defendant. | Case No. 1:18-cv-01367 <br><br> Honorable Sharon Johnson Coleman |

**PLAINTIFF'S RESPONSE TO DEFENDANT
NAVIENT SOLUTIONS, LLC's MOTION FOR JUDGMENT ON THE PLEADINGS**

NOW comes ABDELRAHMAN F. BADER ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., responding to NAVIENT SOLUTIONS, LLC's ("Defendant") Motion for Judgment on the Pleadings ("Defendant's Motion").

**I.  INTRODUCTION**

Defendant's meagre attempt at dismissing Plaintiff's claims is exposed by its incomplete summation of Plaintiff's Complaint.  In its Motion, Defendant incorrectly states that Plaintiff's Complaint "does not plead any facts suggesting that [Defendant's] dialing equipment could automatically generate and dial random or sequential numbers – the only relevant issue in this Court's statutory analysis."  (Dkt. 25-1, p. 7).  Defendant must have failed to read Plaintiff's Complaint in its entirety, because had it did, it would have noticed that Plaintiff has set forth more than enough facts in support of his assertion that Defendant employed an Automatic Telephone Dialing System ("ATDS") to place calls to his cellular ("cell") phone.  Especially under the Fed. R. Civ. P. 12(c) standard, Plaintiff cannot be expected to plead anything more specific, as he has not even been afforded the opportunity to inquire about Defendant's telephone system through

1

complete discovery. *See Gonzalez v. Ocwen Loan Servicing, LLC*, No. 5:18-cv-340-Oc-30PRL, 2018 U.S. Dist. LEXIS 153480, at *16-17 (M.D. Fla. Sep. 5, 2018) ("After all, there is no way for a plaintiff to know the technological capabilities of the device used to place a call short of a caller admitting the fact presuit or the plaintiff learning that information during discovery").

While Defendant's Motion is premised on the decision in *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927 (N.D. Ill. 2018), Defendant disregards key language in Plaintiff's Complaint which makes this matter entirely distinguishable from *Pinkus*. Particularly when taking into account the most recent federal appellate authority which has explicitly analyzed the plain meaning of an ATDS under 47 U.S.C. § 227(a), it is evident that Plaintiff has properly plead claims under the TCPA and that Defendant's Motion should be denied in its entirety. *See Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 U.S. App. LEXIS 26883 (9th Cir. Sep. 20, 2018).

Defendant also moves for judgment on Plaintiff's claims arising under the ICFA on the theory that Plaintiff has not alleged actual damages. Again, Defendant fails to apply the entirety of Plaintiff's enumerated allegations with the relevant case law. In his Complaint, Plaintiff explicitly pleads itemized damages in addition to a number of other damages, and thus, the facts here are completely distinct from the cases cited by Defendant. Accordingly, Defendant's Motion regarding Plaintiff's ICFA claims should also be dismissed.

## II.     FACTUAL ALLEGATIONS

Plaintiff has never had any business relationship with Defendant nor has he ever given Defendant permission to call his cell phone. (Dkt. 1 at ¶¶ 16, 38). However, in August 2017, Defendant began placing systematic phone calls to Plaintiff's cell phone. *Id.* at ¶ 9. Upon speaking with Defendant's representatives, Plaintiff was informed that Defendant was attempting to collect upon a debt owed by an individual named, "Shavon Smith." *Id.* at ¶ 15. Plaintiff is unaware of

any individual by that name, so he informed Defendant's representatives as such, and asked that Defendant stop contacting him. *Id.* at ¶¶ 16-17. Despite Plaintiff's requests, Defendant continued its inundation of phone calls to Plaintiff's cell phone. *Id.* at ¶ 18. Due to the incessant nature of Defendant's contacts, on October 28, 2017, Plaintiff mailed a cease and desist letter to Defendant's headquarters, which caused Plaintiff to incur fees associated with purchasing stamps and sending a certified letter." *Id.* at ¶¶ 21, 29. Defendant received Plaintiff's letter on October 30, 2017. *Id.* at ¶ 22. In spite of having knowledge that it was contacting the wrong person and that Plaintiff did not wish to receive further calls, Defendant's harassing phone calls persisted into 2018, prompting Plaintiff to file suit. *Id.* at ¶ 23.

Plaintiff's Complaint sets forth clear factual support demonstrating that Defendant employed an ATDS to place calls to Plaintiff's cell phone, including the following:

- Defendant is "the largest servicer of student loans in the United States" who "engage[s] in the business of collecting or attempting to collect…student loans owed or due or asserted to be owed or due to others using the mail and telephone across the country." *Id.* at ¶ 6.

- "When Plaintiff answers Defendant's phone calls, he experiences a noticeable pause, lasting approximately four to five seconds in length, before he is connected with a live representative." *Id.* at ¶ 14.

- "Due to the incessant nature of [Defendant's] contacts, on October 28, 2017, Plaintiff, sent, via certified mail, a letter to Defendant's headquarters, demanding that Defendant 'stop calling and harassing [him],'"…but "in spite of Plaintiff reiterating his demands to Defendant in writing, Defendant's harassing phone calls persisted into 2018." *Id.* at ¶¶ 21, 23.

- Defendant willfully placed not less than 105 unconsented phone calls to Plaintiff's cell phone, including multiple phone calls during the same day. *Id.* at ¶¶ 24-25.

This plethora of facts clearly demonstrates Defendant's use of an ATDS. While Plaintiff does reference the words "predictive dialer[1]" in his Complaint, Plaintiff distinctly defines an ATDS as

---

[1] As will be explained herein, this is not fatal to Plaintiff's claims as there are various forms of a predictive dialer, some of which have been found to not qualify as an ATDS, while others have been found to qualify as such. Defendant

3

"equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers," and applies this definition when describing the foregoing list of facts. *Id.* at ¶ 34.

Particularly at this stage in the proceedings where Plaintiff has not even been provided with the right to complete discovery, it is not feasible for Plaintiff to allege any additional facts to describe Defendant's system. Coupled with the surfeit of authority supporting Plaintiff's claims, including the *Marks* decision, it is clear that Plaintiff has plead sufficient facts to defeat Defendant's Motion.

## III. STANDARD OF REVIEW

The same plausibility standard applies to a motion for judgment on the pleadings filed under Federal Rule of Civil Procedure 12(c) as a motion to dismiss under Rule 12(b)(6). *See, St. John v. Cach, LLC,* 822 F.3d 388, 389 (7th Cir. 2016). To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft,* 556 U.S. 662 at 678.

In considering whether a dismissal is warranted pursuant to Fed. R. Civ. P. 12(b)(6), the court must construe the allegations in the complaint in a light most favorable to the plaintiff, accept as true all well-pleaded factual allegations set forth therein, and draw all reasonable inferences in

---

champions this argument in its Motion as well. *See* Defendant's Motion at p. 7 (quoting *ACA Int'l* in stating that, "at least some predictive dialers…have no capacity to generate random or sequential numbers") ; *See also Gonzalez*, 2018 U.S. Dist. LEXIS 153480, at *15-17 ("But as recognized by the FCC and [*ACA Int'l*], it is possible for a device to be a ***predictive dialer*** and have the capacity to generate random or sequential telephone numbers and dial them).

4

favor of the non-moving party. *Fednav Int'l Ltd. v. Continental Ins. Co.,* 624 F.3d 834, 837 (7th Cir. 2010). In the event the court finds that dismissal is warranted, the court should grant the plaintiff leave to amend unless amendment would be futile. *Ford v. Neese*, 119 F.3d 560, 563 (7th Cir. 1997).

Here, Defendant is trying to cut-off Plaintiff's attempts at obtaining justice under a 12(b)(6) standard, on a matter that involves a hyper-technical issue, without affording Plaintiff the right to depose Defendant regarding this issue. Plaintiff has properly defined an ATDS, has plead that Defendant used an ATDS to place calls to Plaintiff's cell phone, and has advanced a number of supporting facts to that effect. Especially at this stage in the proceedings, where all reasonable inferences must be drawn in favor of Plaintiff, it is clear that Defendant's Motion must be denied.

## IV.    DISCUSSION

### A.    Plaintiff has Sufficiently Plead Viable Claims under the TCPA.

#### 1. Courts Have Routinely Found Similar Factual Allegations to Pass Muster Under Fed. R. Civ. P. 12(b)(6).

To state a cause of action under the TCPA, a plaintiff must allege that: (1) a call was made; (2) the caller used an [ATDS] or artificial or prerecorded voice; (3) the telephone number called was assigned to a cellular telephone services; and (4) the caller did not have prior express consent of the recipient. *Hanley v. Green Tree Servicing, LLC,* 934 F. Supp.2d 977, 982 (N.D. Ill. 2013) citing 47 U.S.C. §227(b)(1)(A)(iii).

Here, Plaintiff clearly satisfies these elements, as he alleges that Defendant called his cell phone using an ATDS without ever having prior express consent to do so. (Dkt. 1 at ¶¶ 9-25. The only factor challenged by Defendant's Motion is whether Plaintiff has set forth sufficient facts in alleging that Defendant employed an ATDS to place the unconsented phone calls to Plaintiff's cell phone. Plaintiff has sufficiently done so, especially under the federal notice pleading standard.

5

At the outset of Plaintiff's Complaint, Plaintiff describes Defendant as "the largest servicer of student loans in the United States" who "engage[s] in the business of collecting or attempting to collect…student loans owed or due or asserted to be owed or due to others using the mail and telephone across the country." *Id.* at ¶ 6. As a company that services millions of student loans,[2] and contacts hundreds of thousands of individuals on a daily basis, it is unfathomable to think that Defendant's system lacks the ability to store and/or produce numbers and to dial such numbers using a random or sequential number generator. This is also evidenced by the frequency of Defendant's contacts here. Plaintiff states that Defendant called his cell phone "multiple times during the same day," and he "received at least 105 unconsented calls from Defendant to his cell phone." *Id.* at ¶¶ 24-25. Accordingly, Plaintiff alleges that, "The frequency and nature of Defendant's calls strongly suggests that an ATDS is being utilized." *Id.* at ¶ 38.

Moreover, Plaintiff asserts that, "Due to the incessant nature of [Defendant's] contacts, on October 28, 2017, Plaintiff, sent, via certified mail, a letter to Defendant's headquarters, demanding that Defendant 'stop calling and harassing [him],'"…but "in spite of Plaintiff reiterating his demands to Defendant in writing, Defendant's harassing phone calls persisted into 2018." *Id.* at ¶¶ 21, 23. The fact that Defendant's system continued to place calls after Defendant was aware that Plaintiff was not the purported debtor and did not wish to receive further calls, clearly evinces the fact that Defendant's system stored Plaintiff's phone number and continued to randomly auto-dial that number. There would be no reason for Defendant to continue to contact Plaintiff, especially after having been notified that Plaintiff was not the debtor and to cease all communications. Yet, Defendant's ATDS continued to keep Plaintiff's phone number stored, causing its system to randomly dial the number dozens upon dozens of times.

---

[2] https://www.forbes.com/sites/zackfriedman/2018/07/31/navient-student-loans/#48b507a66891

6

Furthermore, Plaintiff alleges that "when [he] answers Defendant's phone calls, he experiences a noticeable pause, lasting approximately four to five seconds in length, before he is connected with a live representative." (Dkt. 1 at ¶ 14). While Plaintiff admittedly uses the words "predictive dialer" in his Complaint, Plaintiff distinctly defines an ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers." *Id.* at ¶ 34. Applying this definition to his factual allegations, Plaintiff also states the following:

> "Defendant used an *ATDS* in connection with its communications directed towards Plaintiff. The noticeable pause, lasting approximately four to five seconds, which Plaintiff experiences during answered calls before being connected to a live representative of Defendant is instructive that an *ATDS* was being used. Similarly, the frequency and nature of Defendant's calls strongly suggests that an *ATDS* is being utilized." *Id.* at ¶ 38 (emphasis added).

While Defendant's Motion focuses on the decision in *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927 (N.D. Ill. 2018), Defendant overlooks the key differences between the pleadings in that case with the instant matter. What is notably absent from the Amended Complaint filed by the plaintiff in *Pinkus*, is any language regarding the storing of telephone numbers to be called, or any language regarding the use of a random or sequential number generator and the dialing of such numbers. *See* attached Exhibit A, for a true and correct copy of the plaintiff's amended complaint in *Pinkus*. In *Pinkus*, the plaintiff only advanced allegations of a predictive dialer, and foreclosed any mention of the decisive language that is embodied in Plaintiff's Complaint here. Defendant even acknowledges this inconsistency, as it states in its Motion that in *Pinkus,* "the Court entered judgement on the pleadings in the defendant's favor because the plaintiff's complaint '[did] not plausibly allege that he was called with a device that has the capacity to store or produce numbers that have been randomly or sequentially generated." (Dkt. 25-1, p. 17). Here, Plaintiff's Complaint *does* allege that he was called with a device that has the capacity to store or produce

7

numbers that have been randomly or sequentially generated, and as explained above, has set forth numerous facts to that effect. Accordingly, *Pinkus* and the instant matter are noticeably distinct. The fact that Plaintiff has included the words *predictive dialer* in his Complaint still allow his claims to proceed, as it is widely accepted that there are various forms of a predictive dialer, some of which constitute an ATDS, and others which do not. Either way, Plaintiff's pleadings are safe under the Fed. R. Civ. P. 12(b)(6) standard, as he has also plead allegations of an ATDS which involve the use of a device that has the capacity to store or produce numbers that have been randomly or sequentially generated.

Luckily for the parties here, there is a very recent opinion that provides a lot of guidance on the exact issue raised by Defendant's argument. In *Gonzalez,* the plaintiff alleged that the defendant "called him using an autodialer, and that [plaintiff] knows this 'because of the vast number of calls he received and because he heard a pause when he answered his telephone before a voice came on the line and he received prerecorded messages' from [defendant]." The defendant in that case argued that those allegations were insufficient to state a claim that defendant used an ATDS and rather, they only implied that defendant used a ***predictive dialer***. *Gonzalez,* 2018 U.S. Dist. LEXIS 153480, at *16. The court in *Gonzalez* explicitly "disagree[d]," stating:

> [Defendant's] argument relies on a faulty premise, namely that a ***predictive dialer*** cannot be an ATDS. But as recognized by the FCC and the D.C. Circuit, it is possible for a device to be a ***predictive dialer*** and have the capacity to generate random or sequential telephone numbers and dial them. Id. at 702 (noting the FCC explained in its 2003 Order that only "some predictive dialers cannot be programmed to generate random or sequential phone numbers"). So a conclusion that the device [Defendant] used is a ***predictive dialer*** does not exclude the possibility that the device is also an ATDS." *Id.*

The court also mentioned that, "Just because the content or the number of calls may be indicative of the use of a ***predictive dialer***, that does not rule out the possibility that the ***predictive dialer*** is an ATDS." *Id.* at 16, n.8. Here, we encounter a similar situation, and simply because Plaintiff

8

plead the words "predictive dialer" in his Complaint, does not mean that Defendant did not employ an ATDS. Instead, Plaintiff sets forth additional facts regarding the frequency, volume, and nature of Defendant's phone calls, including the fact that Defendant continued to call him after receiving his cease and desist letter, as well as Defendant's collection activities throughout the country.

Courts across the country have denied motions to dismiss where plaintiffs have alleged analogous facts as Plaintiff has here. For instance, *See Crawford v. Target Corp.,* No. 3:14-cv-0090, 2014 U.S. Dist. LEXIS 159203, *7 (N.D. Tex. Nov. 10, 2014) (finding plaintiff to have alleged facts sufficient to establish Defendant's use of an ATDS when plaintiff alleged "that . . . .upon answering Defendant's calls, she experienced periods of silence before hearing a live representative on the line"); s*ee also, Cunningham v. Techstorm, LLC,* No. 3:16-cv-2879, 2017 U.S. Dist. LEXIS 25047, *7 (N.D. Tex. Feb. 23, 2017) ("the Court notes that Plaintiff's description of the calls as including dead-air time is sufficient to establish use of an [ATDS]"); *see also, Loveless,* 2015 U.S. Dist. LEXIS 29982, at *8 (finding plaintiff's allegations regarding defendant's use of an ATDS, "particularly . . . allegations regarding 'dead air' plaintiff experienced with respect to several calls, sufficient to survive a motion to dismiss" because "[s]uch allegations are sufficient to 'raise a reasonable expectation that discovery will reveal evidence of' the use of an ATDS"); *e.g., Evans v. Corinthian Colleges, Inc.* 2014 U.S. Dist. LEXIS 85569 (S.D Ind. June 23, 3014). *Gamboa v. Merrick Bank Corp.,* No. 1:16-cv-02350, 2016 U.S. Dist. LEXIS 188589, *17-19 (N.D. Ga. Nov. 30, 2016) (denying defendant's motion to dismiss and finding plaintiff sufficiently plead defendant's use of an ATDS when plaintiff alleged he heard a "click, beep, or delay" prior to being connected to an operator and where plaintiff alleged that he told defendants to stop calling yet the calls continued); *White v. Synchrony Bank,* No. 8:15-cv-01205, 2015 U.S. Dist. LEXIS 134629 (M.D. Fla. Oct. 2, 2015) (denying motion to dismiss plaintiff's TCPA claim,

noting that plaintiff's "allegation that [defendant] ignored his request to stop calling him supports an inference that the defendant was using [an ATDS]."); *Neptune v. Whetstone Partners, LLC*, 34 F. Supp. 2d 1247, 1250 (S.D. Fla. 2014) (finding plaintiff's TCPA claim contained sufficient factual allegations to survive defendant's motion to dismiss where plaintiff alleged that numerous calls were received over a six-month period, including multiple calls on the same day, and that defendant ignored plaintiff's demands to cease calling, concluding that such facts suggested that defendant was using an ATDS).

Accordingly, Plaintiff has plead sufficient facts to provide Defendant "with 'fair notice' of the claim and its basis." *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). Under the Fed. R. Civ. P. 12(b)(6) standard, Plaintiff cannot be expected to plead any additional facts regarding Defendant's system without having the ability to engage in meaningful discovery, including the ability to depose Defendant's witness regarding Defendant's telephone system. To require Plaintiff to plead any additional facts without access to the discovery process would deprive the Plaintiff of the opportunity to prove her case, and would also violate basic due process fundamentals. *Torres v. Nat'l Enter. Sys., Inc.,* 2012 WL 3245520, at *3 (N.D. Ill. 2012) (holding that it would be virtually impossible, absent discovery, for any plaintiff to gather evidence regarding the type of machine used for a communication left on plaintiff's voicemail); *see also Langston v. Cach, LLC*, 14-cv-08642 at *2 (N.D. Ill. 2015) (the Hon. Charles Norgle, Sr. found plaintiff's allegations to be sufficient to pass muster under the liberal pleading standards of Fed. R. Civ. P. 8, stating that, "The issue raised by Defendant may be resolved through reasonable discovery"); *Hayes v. Receivables Performance Mgmt., LLC*, 2018 U.S. Dist. LEXIS 165084, n. 5 (N.D. Ill. 2018) (finding that defendant's

challenge of the definition of an ATDS at the pleading stage to be premature as plaintiff has not had the benefit of discovery on the system employed by defendant to place the calls in question). The *Gonzalez* court similarly found that, "After all, there is no way for a plaintiff to know the technological capabilities of the device used to place a call short of a caller admitting the fact presuit or the plaintiff learning that information during discovery. So [Plaintiff's] allegations—hearing a pause when he answered before hearing a voice plus his allegation that that [Defendant] used an ATDS—satisfy his burden at this stage of the proceedings. Citing *Sessions*, 317 F. Supp. 3d 1208 (concluding the plaintiff pleaded a TCPA claim by alleging "she heard a 'dead air' silence of five or more seconds before a human representative appeared on the line, which Plaintiff states is indicative of the use of an ATDS.")." *Gonzalez,* 2018 U.S. Dist. LEXIS 153480, at *16-17.

For the same reasons, Plaintiff cannot be expected to plead anything additional, as he has not had the opportunity to depose Defendant's corporate representative surrounding the technical details of Defendant's telephone system. As such, Plaintiff's allegations are well-plead under the liberal pleading requirements of Fed. R. Civ. 12(b)(6) and Defendant's Motion should be denied.

## 2. *Marks* Provides Additional Support for Plaintiff's Claims.

Defendant also argues that, "If anything, [Plaintiff's] complaint *negates* the inference that NSL used a dialer with a random or sequential number generator." (Dkt. 25-1, p. 18). However, as explained in *Marks*, "the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term [ATDS] means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers." *Marks*, 2018 U.S. App. LEXIS 26883, at *25-26. See *also, Adams v.*

*Ocwen Loan Servicing, LLC*, No. 18-81028-CIV-DIMITROULEAS, 2018 U.S. Dist. LEXIS 184513, at *8 (S.D. Fla. Oct. 26, 2018) (Upon the Court's independent review of the relevant case law, the Court agrees with the reasoning and conclusions of post-*ACA* decisions which hold that "the statutory definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator").

Here, Plaintiff has defined an ATDS as "equipment which has the capacity…to ***store*** or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers." (Dkt. 1 at ¶ 34). As echoed herein, Plaintiff has plead sufficient facts in his Complaint giving rise to this inference. Defendant's phone system continued to store and dial Plaintiff's cell phone number despite Plaintiff's demands that Defendant stop contacting him. Accordingly, Defendant's argument that its telephone system did not "dial random telephone numbers or a sequence of numbers," is misguided and irrelevant, as *Marks* and its progeny clearly state that systems which simply ***store*** numbers to be called can qualify as an ATDS. *Marks* is just another example as to why Defendant's Motion should be denied in its entirety.[3]

### B. Plaintiff's ICFA Claim is Well-Plead as Plaintiff has Alleged Economic Damages.

The Illinois Supreme Court has determined that three *independent* factors weigh into the existence of a violation of ICFA under unfairness: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 NE 2d 951, 961 (Ill. 2002). However, the Court held that "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Cheshire Mortgage*

---

[3] Notably, despite the fact that *Marks* is the most recent federal appellate authority to address the definition of an ATDS under the TCPA, as well as the fact that Plaintiff's Complaint mirrors the language in *Marks*, Defendant neglects to address this important decision.

*Service, Inc. v. Montes,* 223 Conn. 80, 106, 612 A.2d 1130, 1143 (1992)). Despite this clear language, Defendant fatally devotes its sole attention on factor (3), while completely neglecting the other two factors.

At any rate, to show actual damages, "plaintiff must [show] that she has been harmed in a concrete, ascertainable way…Defendant's alleged deception must have affected plaintiff in a way that made her tangibly worse off." *Wiegel v. Stork Craft Mfg.*, 780 F. Supp. 2d 691, 2011 U.S. Dist. LEXIS 7807 (N.D. Ill. 2011). In Plaintiff's Complaint, Plaintiff alleges that he "was forced to incur fees associated with purchasing stamps and sending a certified letter," which amounted to $3.84. *See* Plaintiff's Complaint at ¶ 29. Plaintiff has also alleged additional harm, including the "increased usage of his telephone services, loss of cell phone capacity, diminished cell phone functionality, decreased battery life on his cell phone, and diminished space for data storage on his cell phone." *Id.* at ¶ 30. Plaintiff acknowledges that some courts have found the latter half of these damages, in and of themselves, to not constitute substantial injury, however, Defendant overlooks Plaintiff's direct out-of-pocket expenses in conjunction with these other alleged harms. This fact alone is entirely distinguishable from the decisions cited by Defendant, including those decisions rendered from this very circuit.

Defendant argues that the $3.84 is *de minimis,* however, courts have found "the application of the de minimis doctrine to be in conflict with the ILCFA's remedial purpose. To find otherwise would permit defendants to freely engage in unfair practices so long as the effects were 'thinly' spread out over a large population of victims. *Spiegel v. Engagetel*, 2016 U.S. Dist. LEXIS 134254, at \*20-21 (N.D. Ill. Sept. 29, 2016). *See Centerline Equip. Corp. v. Banner Pers. Serv., Inc*., 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008) (loss of computer paper and toner from unwanted fax was an injury); *People ex rel. Hartigan v. Stianos*, 131 Ill. App. 3d 575, 475 N.E.2d 1024, 1029, 86 Ill.

13

Dec. 645 (Ill. Ct. App. 1985) (overcharging customers only a few cents each can cause substantial losses when taken in the aggregate). In addition, the Honorable Judge Kennelly has explicitly addressed this same issue, stating"

> "The [ICFA] is a consumer fraud statute and the – it's known by pretty much anybody, and you have to figure that legislatures who draft these laws know this, is that in a lot of consumer fraud cases or what is called consumer fraud under that statute, which doesn't just include fraud, but it also includes unfair practices, is going to include small amount of money. And I recognize that there are a couple of judges who have found – one apparently found that 90 bucks isn't enough and one that apparently found that 400 bucks isn't enough. I just don't agree with that. I just think it's dead wrong." *Klimek v. Verde Energy USA, Inc.* No. 17-cv-00817 (N.D. Ill. Mar. 28, 2017) (transcript of proceedings denying Defendant's motion to dismiss)[4].

While Defendant also cites to *Nelson v. Ashford Univ., LLC*, No. 16-cv-3491, 2016 U.S. Dist. LEXIS 116189 (N.D. Ill. Aug. 29, 2016), to "bolster" its argument, that case, along with every other case cited by Defendant, is factually distinguishable. *Nelson* strictly dealt with the impact on the plaintiff's cell phone, and the plaintiff there did not allege a dollar figure associated with her damages. Not one case cited by Defendant includes a plaintiff who alleged an actual itemized monetary injury, as is the situation here. As such, Defendant's reliance on cases like *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988 (N.D. Ill. 2016) (plaintiff did not even specify what injury or cost he purportedly suffered) and *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610 (N.D. Ill. 2009) (only damage alleged by plaintiff is the receipt of faxes) is ill-advised and does not take into account the key factual distinction that is prevalent in this matter.

Defendant also overlooks the impact its conduct has on the general public. Plaintiff here never owed Defendant a single penny, but yet Defendant continuously placed automated calls to Plaintiff's cell phone in an attempt to collect upon a debt owed by an unknown individual. Despite

---

[4] *See* attached Exhibit B, for a true and correct copy of the transcript of proceedings in *Klimek v. Verde Energy USA, Inc.* No. 17-cv-00817 (N.D. Ill. Mar. 28, 2017).

notifying Defendant via oral means to stop contacting him, Defendant's conduct ensued. Plaintiff then made additional efforts to stop Defendant's harassment when he sent Defendant a certified cease and desist letter, and was forced to incur the $3.84 that he should have never been subjected to in the first place. Defendant is "the largest servicer of student loans in the United States." (Dkt. 1 at ¶ 6). As such, Defendant inherently collects upon hundreds of thousands of accounts on a regular basis. If Plaintiff was forced to incur this $3.84 in an effort to get Defendant's calls to stop, this sheds light on the countless number of other consumers throughout the country who are forced to incur these same expenses.

Even though Plaintiff need not satisfy all three *Robinson* factors, he has fulfilled his burden in doing so. Defendant incurably disregards the other two criteria, and in conjunction with its failure to address the totality of the enumerated economic injuries that Plaintiff has alleged, it is clear that Plaintiff has plead sufficient facts to state a claim under the ICFA.

## CONCLUSION

In light of the above, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion in its entirety. Alternatively, in the event the Court determines judgment on the pleadings is proper for Defendant under Fed. R. Civ. P. 12(c), Plaintiff asks that this Court allow Plaintiff leave to amend his Complaint. *See Ford v. Neese*, 119 F.3d 560, 563 (7th Cir. 1997) (In the event the court finds that dismissal is warranted, the court should grant the plaintiff leave to amend unless amendment would be futile).

Dated: November 6, 2018          Respectfully submitted,

                                       s/ Taxiarchis Hatzidimitriadis
                                       Taxiarchis Hatzidimitriadis, Esq. #6319225
                                       Counsel for Plaintiff
                                       Admitted in the Northern District of Illinois
                                       Sulaiman Law Group, Ltd.
                                       2500 S. Highland Ave., Suite 200

Lombard, Illinois 60148
(630) 575-8181 x110 (phone)
(630) 575-8188 (fax)
thatz@sulaimanlaw.com

**CERTIFICATE OF SERVICE**

The undersigned, one of the attorneys for plaintiff, certifies that on November 6, 2018, he caused a copy of the foregoing, **PLAINTIFF'S RESPONSE TO DEFENDANT NAVIENT SOLUTIONS, LLC's MOTION FOR JUDGMENT ON THE PLEADINGS**, TO BE SERVED ELECTRONICALLY VIA CM/ECF SYSTEM ON:

FOLEY & LARDNER LLP
Robert H. Griffith
Ryan J. Lowry
Irina N. Kashcheyeva (Of Counsel)
rgriffith@foley.com
rlowry@foley.com
ikashcheyeva@foley.com

Respectfully submitted,

s/ Taxiarchis Hatzidimitriadis
Taxiarchis Hatzidimitriadis, Esq.

16