UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABDELRAHMAN F. BADER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 1:18-cv-01367 |
| NAVIENT SOLUTIONS, LLC, | ) ) Hon. Sharon Johnson Coleman |
| Defendant. | ) ) ) |

**<u>DEFENDANT NAVIENT SOLUTIONS, LLC'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO ALTER JUDGMENT AND STAY PROCEEDINGS</u>**

I.  **INTRODUCTION**

On June 14, 2019, after a full round of briefing on Navient Solutions, LLC's ("NSL") motion for judgment on the pleadings (Dkt. 25, 28, 33, 37, 43-44), this Court issued a well-reasoned decision granting NSL's motion and dismissing all of Bader's claims with prejudice. *See Bader v. Navient Sols., LLC*, No. 18-cv-1367, 2019 WL 2491537 (N.D. Ill. June 14, 2019).[1]  The Court ruled that, in order to adequately allege the use of an automatic telephone dialing system ("ATDS"), a plaintiff must plausibly assert that the defendant used equipment that can: (1) generate numbers, either randomly or sequentially, and (2) dial such numbers.  After having reviewed the facts as set forth in Bader's Complaint, the Court then correctly held that Bader "has not alleged any facts that make it plausible [NSL] used an autodialer, as interpreted under the plain meaning of the TCPA." *Bader*, 2019 WL 2491537, at *2.  In doing so, the Court followed other decisions in this District, including in *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927 (N.D. Ill. 2018) (Feinerman, J.), and *Gadelhak v. AT&T Servs.,* No. 17-cv-1559, 2019 U.S. Dist. LEXIS 55200 (N.D. Ill. Mar. 29, 2019) (Chang, J.).

In seeking to amend the Court's judgment, Bader recites no newly discovered evidence or manifest error of law—the prerequisites for relief under Rule 59(e).  Nor does he even cite any new relevant authority on the subject—let alone any controlling precedent.  Rather, Bader merely recycles the same arguments that he asserted previously—all of which have been considered and rejected by this Court.  For these reasons, Bader's Motion for Reconsideration (Dkt. 49) must be denied.

---

[1] Bader's Complaint asserted two claims—violation of the TCPA and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1.  Bader does not seek reconsideration of the Court's Order as to the ICFA claim.

## II. LEGAL STANDARD

"[A] motion to alter or amend a judgment is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *L.B. Credit Corp. v. Resolution Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). "To prevail on a motion for reconsideration under [Federal] Rule [of Civil Procedure] 59, the movant must present either newly discovered evidence or establish a manifest error of law or fact." *Oto v. Metro Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citations omitted). "A 'manifest error'. . . is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* (citations omitted). Motions brought under Rule 59 require plaintiffs to meet the high burden of showing that the district court abused its discretion. *See L.B. Credit Corp.,* 49 F.3d at 1267 ("The decision to grant or deny relief on such a motion is one we entrust to the district court's sound judgment. Our review here is commensurately deferential; only if the district court abused its discretion in denying LB Credit's request will we reverse.").

## III. BADER CANNOT ESTABLISH MANIFEST ERROR OF LAW OR FACT AND CANNOT POINT TO NEW EVIDENCE, SO AS TO JUSTIFY RELIEF UNDER RULE 59(e).

Bader's Motion is not based on any new evidence, or any errors of fact. Rather, Bader purportedly proceeds on the basis of a manifest error of law. However, Bader's Motion does not reference any controlling authority on the issue and does not come close to demonstrating that the Court's June 14, 2019 ruling granting NSL's motion for judgment on the pleadings resulted from a wholesale disregard, misapplication, or failure to recognize controlling precedent—as required to meet the demanding burden of Rule 59. For that reason, Bader's Motion must be denied.

### A. Consistent With Precedent From This District, This Court Has Properly Ruled That Bader's ATDS Allegations Fail To Plausibly Suggest That NSL's Telephone System Was An ATDS.

Bader's principal argument in his Motion—same as the argument he made in response to NSL's motion for judgment on the pleadings—is that "there is no way for a plaintiff to know the technological capabilities of the device used to place a call short of a caller admitting the fact presuit or the plaintiff learning that information during discovery." Mot. at 2 (citing *Gonzalez v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 153480, at *16-17 (M.D. Fla. Sep. 5, 2018)). Bader contends that "[o]ther than the circumstantial facts outlined above [in the Complaint, he] and his counsel cannot, pursuant to Fed. R. Civ. P. 11, assert anything additional regarding the capacity of Defendant's telephone system to randomly or sequentially generate numbers." (Mot. at 8.)

As NSL already explained while rebutting this same argument the first time it was asserted—Bader's contention is categorically not true. As a plaintiff in a TCPA case, Bader is ***required*** to allege non-conclusory facts to plead the use of an ATDS, a critical element of a TCPA cause of action, before he can unlock the doors of discovery. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).[2] That standard can certainly be met if, for example, there does not seem to be any connection between the caller and the called entity, or if the call is otherwise truly random or sequential (such as, for example, if a hospital is receiving multiple calls on sequential numbers about cruise offerings). What Plaintiff is no longer entitled to do is rely on the assertion that the system at issue is a predictive dialer, and then describe the characteristics of the predictive dialer. The reason for this is clear – the fact that a system may be a predictive dialer does not make it any

---

[2] Bader cites *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010), to argue that the relevant inquiry at the pleading stage is whether these things "could . . . have happened not did they happen." However, *Swanson* is not a TCPA case, and it generally reaffirms that "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Id.* at 403. While "the plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 984 (N.D. Ill. 2013), on reconsideration (June 7, 2013). Bader's Complaint fails the *Swanson*—and the *Iqbal*—standard with regard to the ATDS element.

more likely, or plausible, that the system has the present capacity to generate random or sequential numbers and then to dial them.

Bader argues that his Complaint includes "facts regarding the frequency, volume, and nature of Defendant's phone calls, including the fact that Defendant continued to call him after receiving his cease and desist letter, as well as Defendant's collection activities throughout the country." (Mot. at 12.) The Court has already fully analyzed these allegations, and indeed, set them out in its ruling. *See Bader*, 2019 WL 2491537, at *2. These allegations—which are virtually identical to the allegations in *Pinkus* (Dkt. 33, at 5)—go towards Bader's assertion that NSL's telephone system is a predictive dialer and, therefore, do not aid Bader. As noted by this Court, these allegations—including the allegation that NSL tried to reach another customer and continued calling Bader even after allegedly being informed that he was not the person NSL was seeking to reach—may have been sufficient before *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), but not after. After the *ACA International* decision, Bader has to plead that NSL used equipment with the present capabilities to generate numbers randomly or sequentially in order to allege use of an autodialer. *Bader*, 2019 WL 2491537, at *2. Here, "Bader does not put forth any factual allegations that suggest Navient Solutions dialed his number using equipment that had the capacity to generate random or sequential numbers." *See id.*

Indeed, if repeated calls mean anything, it is that NSL intended to reach a particular person, and did not use a random or sequential number generator to generate and then dial Bader's number. *Smith v. Aitima Med. Equip., Inc.*, No. CV 16-0339-AB, 2016 WL 4618780, at *6 (C.D. Cal. July 29, 2016) (granting defendant's motion to dismiss where the caller "asked for a specific individual . . . [which goes] against an inference that an ATDS was used because they suggest that the calls were directed at certain individuals and not randomly generated by an automated device").

5

In fact, another court just recently dismissed a TCPA complaint with prejudice based on the same allegation—that the plaintiff received text messages intended for another person at her reassigned number. *Snow v. Gen. Electric Co.*, No. 5:18-cv-511-FL, 2019 WL 2500407, at *8 (E.D.N.C. June 14, 2019). As the Court explained, "[b]ecause plaintiff alleges that the text messages she received were intended for the prior owner or holder of her reassigned number, a targeted recipient, and because of the alleged content of the messages, it is not reasonable to infer that the messages were sent with equipment 'using a random or sequential number generator.'" *Id.* at 8-9. Just as in *Snow* and *Pinkus*, "plaintiff's own allegations foreclose a determination that defendants called her with equipment using a random or sequential number generator." *Id.* at 12; *see also Ibey v. Taco Bell Corp.*, No. 12-CV-0583, 2012 WL 2401972, at *3 (S.D. Cal. June 18, 2012) (where the complaint admitted that plaintiff opted in to receive communications from Taco Bell, it was more plausible that Taco Bell was contacting him pursuant to that consent rather than through the use of a random or sequential number generator in violation of the TCPA).

Bader also incorrectly contends this Court's opinion resulted from a manifest error of law due to its reliance on *Pinkus* and *Gadelhak*, given "the inapplicability of these opinions." (Mot. at 12.) But Bader fails to set forth any bases to suggest that either of these two opinions—both well-reasoned decisions rendered by other judges in this District—are bad law or improper.

For example, Bader attempts to distinguish this case from *Pinkus* by alleging that his allegations in the Complaint were more substantial than those pled in *Pinkus*. They were not. Indeed, as NSL has previously explained (*see* Dkt. 33, at 5), the allegations here are nearly identical to those in *Pinkus*. In particular, the *Pinkus* complaint alleged a predictive dialer, a pause when plaintiff would answer, the receipt of approximately 100 calls, and all calls intended for a person who was not the defendant's customer. (*Pinkus* Am. Compl., Dkt. 28-1, ¶¶18-19, 21, 23.) Having

6

considered these allegations, the Court in *Pinkus* concluded the complaint did not assert any facts to demonstrate that the telephone system at issue had the capacity to generate numbers randomly or sequentially. *Pinkus*, 319 F. Supp. at 939. Bader's own allegations are virtually identical to those in *Pinkus*, and he has done nothing to differentiate his case from *Pinkus*.

Likewise, Bader seeks to distinguish this case from *Gadelhak*, 2019 WL 1429346, because *Gadelhak* was decided on summary judgment. But the Court is well aware of this, and simply cited *Gadelhak* for the proposition that "defendant's equipment which dialed numbers from a generated list did not qualify as an autodialer." *Bader*, 2019 WL 2491537, at *2. There is nothing improper about the Court's citation.

Importantly, the evidence in *Gadelhak* mirrors the allegations in Bader. Like Bader, plaintiff in *Gadelhak* was not a customer of the defendant, but received certain text messages from the defendant because his "number must have been erroneously listed on an AT&T account." *Id.* at *1. This Court dismissed the case, observing that plaintiff failed to establish that defendant's telephony equipment—which sent text messages to customers' numbers pulled from a list of stored numbers—qualified as an ATDS. Despite a different procedural posture, *Gadelhak* is instructive here.

**B.     Bader Fails To Cite Any Controlling Authority To The Contrary.**

In his current Motion, Bader relies on many of the same out-of-circuit cases that he cited during the motion for judgment on the pleadings briefing. For example, Bader again references *Gonzalez*, 2018 WL 4217065—a case from another jurisdiction that actually supports NSL's central position that predictive dialers do not, as a category, qualify as an ATDS, and that instead the telephone equipment has to generate the numbers randomly or sequentially and then dial those numbers. However, like Bader's other claims, NSL has already distinguished *Gonzalez* from the

7

instant matter. (Dkt. 33, at 6-7.) Specifically, the plaintiff in *Gonzalez* alleged a higher number of calls (approximately 500), taking place over four years, and that the defendant placed calls using an artificial or pre-recorded voice, which obviated the need for an ATDS analysis. *Id.* at *7. Here, Bader alleges only around 100 calls over, at most, six months, and no calls using an artificial or pre-recorded voice, but, instead, calls allegedly made with a predictive dialer.

Bader similarly cites other out-of-circuit cases that pre-date the March 18, 2018 decision in *ACA International* and are inapposite for that reason alone. (Mot. at 6-7 (citing *Gamboa v. Merrick Bank Corp.*, No. 1:16-cv-02350, 2016 U.S. Dist. LEXIS 188589, at *17-19 (N.D. Ga. Nov. 30, 2016); *White v. Synchrony Bank*, No. 8:15-cv-01205, 2015 U.S. Dist. LEXIS 134629 (M.D. Fla. Oct. 2, 2015); *Neptune v. Whetstone Partners, LLC*, 34 F. Supp. 2d 1247, 1250 (S.D. Fla. 2014); *Crawford v. Target Corp.*, No. 3:14-cv-0090, 2014 U.S. Dist. LEXIS 159203, *7 (N.D. Tex. Nov. 10, 2014); *Cunningham v. Techstorm, LLC*, No. 3:16-cv-2879, 2017 U.S. Dist. LEXIS 25047, *7 (N.D. Tex. Feb. 23, 2017); *Loveless v. A1 Solar Power, Inc.*, No. EDCV141779 FMODTBX, 2015 WL 4498787 (C.D. Cal. July 23, 2015); *Torres v. Nat'l Enter. Sys., Inc.,* 2012 WL 3245520, at *3 (N.D. Ill. 2012); *Langston v. Cach, LLC*, 14-cv-08642, at *2 (N.D. Ill. 2015)).

Still other cases cited by Bader are not precedential, wrongly decided and/or nonetheless distinguishable. (Mot. at 9-10 (citing *Asher v. Quicken Loans, Inc*., No. 2:17-cv-1203, 2019 WL 131854, at *7 (crediting the conclusory allegation that "the calls were made using an ATDS, as the term is defined in 47 U.S.C. § 227(a)(1)); *Wilson v. Quest Diagnostics, Inc*., 2018 U.S. Dist. LEXIS 212023, at * 10 (D.N.J. Dec. 17, 2018) (crediting predictive dialer allegations and erroneously concluding that predictive dialers qualify as ATDS even after *ACA International*); *Washington v. Ross Med. Educ. Ctr.*, No. 3:18CV139-PPS/MGG, 2018 WL 2336073, at *1 (N.D. Ind. May 22, 2018) (erroneously crediting allegations of dead-air time—indicative of the use of

predictive dialer—to be sufficient); *Sessions v. Barclays Bank Del*., 317 F. Supp. 3d 1208 (N.D. Ga. 2018) (same).) The Court should not rely on this unpersuasive and inapposite authority.

Bader only cites two cases from this District dealing with the subject of ATDS capacity post-*ACA International*. First, Bader relies on *Zeidel v. Nat'l Gas & Elec*., *Ltd. Liab. Co*., No. 18 CV 06792, 2019 WL 2161546 (N.D. Ill. May 17, 2019) (Lee, J.), where the Court denied defendant's motion to dismiss a TCPA claim. However, *Zeidel* is distinguishable. There, plaintiff alleged that defendant placed multiple generic calls to market its services and, further, the calls came from two different "spoofed" numbers. These allegations are more consistent with the alleged use of an ATDS. *Id.* at *3. Here, by contrast, the content of the calls was clearly intended for a specific individual whom the Complaint expressly alleged to be a prior NSL customer.

Second, Bader cites *Hayes v. Receivables Performance Mgmt., LLC*, No. 17-cv-1239, 2018 WL 4616309 (N.D. Ill. 2018) (Dow, J.). To begin with, *Hayes* was decided long before the Court ruled on NSL's motion, yet Plaintiff did not raise it to the Court. Further, defendant's motion to dismiss in *Hayes* was fully briefed *prior* to *ACA International* being decided, and therefore the Court there did not consider the impact of *ACA International* on the FCC's predictive dialer regulations. Thus, the decision in *Hayes*—which relied on the presence of various predictive dialer characteristics to satisfy the ATDS definition at the pleading stage—is not persuasive.

In sum, far from establishing misapplication of the controlling precedent, Bader's brief cites authority that is either inapposite or has been considered and rejected by this Court. Considering that "Rule 59 is not a vehicle for rearguing previously rejected motions," Bader's Motion must be denied. *See Oto*, 224 F.3d at 606 (affirming the district court's denial of motion where defendant's "motions for reconsideration did little more than rehash old arguments

9

[because] Rule 59 is not a vehicle for rearguing previously rejected motions and, as that is what [defendant] attempted to do.").[3]

## IV. CONCLUSION

Because Bader fails to establish newly discovered evidence or a manifest error of law or fact, the Court should deny Bader's Motion and affirm its June 14, 2019 judgment dismissing Bader's Complaint as a matter of law.

Dated: August 13, 2019

Respectfully submitted,

ATTORNEYS FOR DEFENDANT

By: /s/ Robert H. Griffith
    One of Their Attorneys

Robert H. Griffith
FOLEY & LARDNER LLP
Firm No. 17190
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Tel: 312.832.4500
Fax: 312.832.4700
rgriffith@foley.com

---

[3] Bader also states that, if his Motion is successful, his claims should be stayed pending the outcome of the appeal in *Gadelhak v. AT&T Servs.,* No. 17-cv-1559, 2019 U.S. Dist. LEXIS 55200 (N.D. Ill. Mar. 29, 2019), *appeal pending,* No. 19-1738. NSL respectfully requests that, to the extent the Court grants Bader's request to reinstate his TCPA claim, the Court order a separate briefing and oral argument on Bader's motion to stay proceedings, based on the particular decision of this Court and the procedural posture of this and the *Gadelhak* appeal at the relevant time.

## **CERTIFICATE OF SERVICE**

      Robert H. Griffith hereby states that on August 13, 2019, he served a copy of **DEFENDANT NAVIENT SOLUTIONS, LLC'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO ALTER JUDGMENT AND STAY PROCEEDINGS**, and this Certificate of Service, via email on:

Taxiarchis Hatzidimitriadis
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, IL 60148
thatz@sulaimanlaw.com

      /s/ Robert H. Griffith
      Robert H. Griffith
      FOLEY & LARDNER LLP
      321 North Clark Street, Suite 2800
      Chicago, IL 60654-5313
      rgriffith@foley.com
      Telephone: 312.832.5174
      Facsimile: 312.832.4700

4852-1611-3312.1